# CHARLESTON.

HARBERT v. MONONGAHELA RIVER RAILROAD CO.

Submitted June 10, 1901.  Decided November 30, 1901.

JUSTICE OF PEACE—*Certiorari—Appeal—Reversal.*

    Where a party, against whom a judgment was rendered by a justice of the peace, on the verdict of a jury, obtained a writ of *certiorari* and removed the same into the circuit court to be reviewed, before the decision of the case of *Richmond* v. *Henderson*, 48 W. Va. 389, (37 S. E. 653), ·and said judgment was affirmed by the circuit court and a writ of error awarded by this Court, before said decision of *Richmond* v. *Henderson*, and the plaintiff in error has asked that said *certiorari* be treated as an appeal, the judgment of the circuit court should be reversed and the case remanded with directions to treat it as being in said circuit court on appeal and proceed with it accordingly. (p. 257).

Error to Circuit Court, Harrison County.

Action by Sampson Harbert against the Monongahela River Railroad Company. Judgment for plaintiff before a justice was affirmed on *certiorari,* and defendant brings error.

*Reversed.*

JOHN BASSEL, for plaintiff in error.

DAVIS & DAVIS, for defendant in error.

POFFENBARGER, JUDGE:

Sampson Harbert instituted a civil action against the Monon-

gahela River Railroad Company in December, 1899, before a justice of the peace of Harrison County, for the recovery of damages for the loss of two horses, a wagon and some other property, predicating the claim upon the alleged negligence of said railroad company. The trial was by jury and resulted in a verdict for the plaintiff for two hundred and seventy dollars. Exceptions were taken and a motion to set aside the verdict was overruled and judgment entered. A writ of *certiorari* was obtained by the defendant from the judge of the circuit court and the action thereby removed into said court, and the judgment was there affirmed, and the defendant comes here on a writ of error and *supersedeas* to, the judgment of said court.

After the writ of error was allowed by this Court, the case of *Richmond* v. *Henderson,* (37 S. E. 653), holding that the writ of *certiorari* does not lie in the case of a judgment of a justice rendered upon the verdict of a jury and that the remedy in such case is by appeal, was decided. Counsel for the defendant in error insists that the writ of *certiorari,* which is the basis of all these appellate proceedings, was improperly awarded and that the judgment of the justice, affirmed by the circuit court, must be affirmed by this Court, for the reason that it has never been brought up from the justice's court by any proper appellate proceedings. Counsel for the plaintiff in error, however, urges that, although it has mistaken its remedy as viewed in the light of the latest enunciation of the law upon the subject by this Court, *certiorari* was at the time of the issuance of the writ in this case the proper remedy, according to numerous decisions of this Court, beginning with *Barlow* v. *Daniels,* 25 W. Va. 512, decided April 4, 1885, and that it ought not for that reason to be deprived of the benefit of the writ in this case. Counsel argues that the same principles which govern the repeal of a law by legislative enactment ought to be applied here and save to those who having, under compulsion, relied upon and followed the former decisions of this Court, denying the right of appeal in such cases and according the remedy by *certiorari,* the benefit of the remedy by said writ. It is further insisted that the writ of *certiorari,* under the circumstances, ought to be treated as an appeal, if the benefit of it cannot in any other way be preserved to the plaintiff in error.

As this Court had closed every door to an appellate court in cases of the class to which this one belongs, except by writ of *certiorari,* and the defendant was bound to go up by that writ or submit absolutely and finally to the judgment of the justice, according to the course of the decisions of this Court at the time of the trial of this case, it is a great hardship to deny to the plaintiff in error the benefit of that writ. But the rule is that, where one decision or a series of decisions has been overruled in a subsequent case, the latest decision must be followed and applied in all subsequent cases in which the same question arises. 23 Am. & Eng. Ency. Law 20. The first position taken by counsel for plaintiff in error on this question is, therefore, untenable. Blackstone says, in substance, that the effect of overruling a former decision is not to change the law, or make a new law, but to declare that the holding of such former decisions never was the law. "But even in such cases the subsequent judges do not pretend to make a new law, but to vindicate the old one from misrepresentation; for, if it be found that the former decision is manifestly absurd or unjust, it is declared, not that such sentence was bad law; but that it was not law; that is, that it is not the established custom of the realm, as has been erroneously determined." 1 Blk. Com. 70. This subject is very ably and fully discussed by JUDGE BRANNON in *Town of Weston* v. *Ralston,* (36 S. E. 454), and also in his work on the Fourteenth Amendment, pp. 407 to 416, inclusive. There is one well defined exception to the rule which he discusses and admits, and that is in cases in which contracts have been made by parties relying, in good faith, upon the decisions of the highest courts, but such contracts, to be protected, must be commercial contracts. This distinction and departure was first made in the case of *Gelpcke* v. *Dubuque,* 1 Wall. 205, which has been followed by some other federal court decisions. A few instances are noticed in which the exception to the general rule has been extended beyond the principle of the case of *Gelpcke* v. *Dubuque,* but they are too limited in number to be regarded as having established such extension of the exception to the rule. One is the case of *Harrison* v. *Jex,* 55 N. Y. 421, 14 Am. Rep. 285, in which it was held that "A party to a contract has a right to rely on the decision of the highest judicial tribunal in the land as to the law governing his contract." In

that case, a mortgage was executed before the passage of the legal tender act. After the decision of the United States Supreme Court, declaring the act void as to contracts made prior to its passage, the grantee of the mortgagor tendered payment of the mortgage debt in legal tender notes, which the mortgagee refused. Subsequently the United States Supreme Court overruled that decision and held in another case that the legal tender act was valid. The New York court held that the tender did not discharge the lien of the mortgage, it being insufficient according to the law as then declared. In *Corvallis* v. *Stock,* 12 Ore. 391, the question was whether an appeal to the circuit court of Benton County would lie from a judgment of the recorder's court of the city for a violation of a city ordinance. It had formerly been held in *Sellers* v. *Corvallis,* 5 Ore. 274, that an appeal would lie in such case. The latter case had been overruled in *La Fayette* v. *Clark,* 9 Ore. 225, but, in *Corvallis* v. *Stock,* the lower court followed the overruled case of *Sellers* v. *Corvallis* and sustained the appeal. The supreme court also sustained it notwithstanding it had overruled the same proposition. Of the overruled case the court said: "That decision was rendered by judges occupying the same position as we do, and while we do not endorse it nor regard the reasons upon which it was predicated as satisfactory, we do not feel at liberty to depart from it in this particular case. If it were a case of continued injustice, or of a clear violation of obvious principles of law we ought not to hesitate a moment in pronouncing it not law; but under the circumstances we think we should be controlled by the doctrine of *stare decisis.* Which ever way we might determine the matter would be of no public importance." The same observation might be made here with respect to the cases of *Barlow* v. *Daniels* and others overruled by the decision in the case of *Richmond* v. *Henderson,* but the application of the principle of *stare decisis* in the case of *Corvallis* v. *Stock* is not clear to say the least. Until *Sellers* v. *Corvallis* was overruled it would have applied, but how it applied afterwards upon the authority of that case does not satisfactorily appear. These two cases, extending the exception to the general rule far beyond the limitation put upon it in *Gelpecke* v. *Dubuque,* although decided by reputable and able courts, are rather isolated and cannot be regarded as sufficiently establish-

ing such extension to authorize a departure from the general
rule by this Court.   They are in no sense binding upon us,
although entitled to consideration.

The second contention of counsel for plaintiff in error, that
the *certiorari* ought to be treated as an appeal, finds some sup-
port in the reasoning of JUDGE SNYDER in *Vandervort* v. *Fouse,*
30 W. Va. 327.   After discussing, at page 332, the broad and
liberal signification of the word "appeal," and the use of that
word in section 28, of article VIII of the constitution, he says:
"Considering, then, that the provision of the Constitution under
consideration was framed by the legislature in 1879, and adopted
by the people as an amendment in 1880, we may fairly presume
that the word "appeal" therein was not used in its technical
sense, but in the popular and broader sense in which it is used
in many of the statutes, and as embracing, not only appeals in
the limited definition of that term, but also writs of error and
*certiorari,* when it is necessary to do so in order to give effect to
legislation presumably intended to give effect to said constitu-
tional provision."   The opinion in that case contains a great deal
more language of the same import.   He was then discussing the
constitutionality of the provision of chapter 110 of the Code,
alowing *certiorari* as a proceeding for reviewing a judgment of
a justice of the peace rendered upon the verdict of a jury.
JUDGE HOLT, in discussing *certiorari* under said statute in
*Long* v. *O. R. R. Co.,* 35 W. Va. 333, says, "The principle use
of this writ with us before 1868 was to bring up records, in
whole or in part, in aid of some other proceeding; but the stat-
ute of 1882-'89, as now found in the Code, page 761, chapter
110, has very much enlarged its scope, giving power to rehear
after judgment on the evidence certified, as well as correct errors
in law, and in a proper case to retain for trial *de novo,* being
thus in effect an apeal from the judgment of a justice in a certain
class of cases."   In addition to this, section 173 of chapter 50 of
the Code, warrants great liberality in procedure in respect to
appeals from judgments of justices of the peace.   It says, "In all
cases of appeal from a justice to a circuit court, the court (sub-
ject to the foregoing rules, when they are applicable,) shall make
any order during the progress of the cause, which the principles
of law or equity may require; and shall render judgment as the
right shall appear, and proceed to enforce the same as other

judgments of the court are enforced without remanding the cause again to the justice."

Under this liberal construction of the word "appeal" as used in the statutes and constitution, relating to proceedings in justices' courts, and the liberal provision of said section 173 and in view of the fact that the plaintiff in error here has done all that it could do to bring its case into the circuit court for a new trial, to which it is entitled, under the statute, as now expounded by this Court in the case of *Richmond* v. *Henderson,* the *certiorari* may, and ought to, be treated as an appeal. It is a mere question of procedure and does not affect the merits of the case in any way. Having been prevented from taking its appeal, by the several decisions of this Court, holding that an appeal did not lie from the judgment of a justice rendered upon the verdict of a jury, it is equitable to allow the plaintiff in error the benefit of his writ of *certiorari* to operate, and be treated, as an appeal. In this connection it is well to remember that the reason for the decisions in *Barlow* v. *Daniels,* cited, *Hickman* v. *Railroad Co.,* 30 W. Va. 296, and other cases following them, was not the technical nature of an appeal, so much as the supposed prohibition by the constitution of a retrial of the facts. That reason no longer stands in the way.

There is a difference between this case and that of *Richmond* v. *Henderson,* in this, that here the Court is asked to treat the *certiorari* as an appeal, while in the other case no such request was made. It is not the intention to overrule the proposition laid down in *Richmond* v. *Henderson.* The *certiorari* cannot operate as such. *Certiorari* is not the proper remedy for reviewing the judgment of a justice rendered upon the verdict of a jury. It is not to be reviewed, but to be re-opened for trial *de novo,* without regard to any question of error in the judgment of the justice. This Court cannot so try the case. The trial must be had in the circuit court. This Court cannot treat the *certiorari* as an appeal, but the circuit court should do so, upon the request of the appellant, and proceed to treat the case as upon an appeal. It may be objected that the bond is not such in its penalty as the statute requires in the case of an appeal from the judgment of a justice, but section 170 of chapter 50, Code, provides that "If the court, in any case, be of opinion that the bond filed is insufficient, or the security doubtful, it may order a new bond in proper

form and with good security to be given within a time specified in such order," etc.

For these reasons the judgment of the circuit court, affirming the judgment of the justice, is reversed and the case is remanded to said court with directions to treat it as being in that court on appeal from the judgment of the justice, if asked to do so, by the plaintiff in error here, and proceed with the same accordingly.

*Reversed.*