## I. J. SEELEY v. R. M. WELLES.

ERROR TO THE COURT OF COMMON PLEAS OF BRADFORD COUNTY.

Argued March 15, 1888—Decided April 23, 1888.

In an action for the price of a reaper and binder, the defendant testified that he told the plaintiff he would not take it until he tried it, and, if it worked to suit him and his team could handle it, he would buy it and he was to be the judge himself. The court charged the jury that if they believed defendant, then the plaintiff could not recover provided they found the machine did not work well and that defendant had rea-

Charge of Court below.

sonable cause to be displeased with it; that, if the machine did good work, defendant could not say "I have made a bad bargain, I am not satisfied," and return it.

1. *Held*, error: that, defendant's objections may have been ill-founded, or unreasonable in the opinion of others, yet if they were made in good faith he had the right, if his testimony were believed, to reject the machine.

Before GORDON, C. J., PAXSON, STERRETT, GREEN, CLARK and WILLIAMS, JJ.; TRUNKEY, J., absent.

No. 402 January Term 1887, Sup. Ct.; court below, No. 963 May Term 1886, C. P.

On May 1, 1886, an appeal was filed by the defendant from the judgment of a justice of the peace in favor of R. M. Welles against I. J. Seeley.

At the trial on February 4, 1887, it appeared that the plaintiff had sued the defendant to recover $50, the first instalment of $150, the price of an Osborne reaper and binder he claimed to have sold and delivered to the defendant in August, 1885. The reaper had been operated a few days and then returned by the defendant as unsatisfactory.

The contention was whether the sale was absolute, as claimed by the plaintiff, or conditional as claimed by the defendant, who testified: "I told him I would come down and try it, and if it worked to suit me and my team could handle it satisfactorily on my land, I would buy it, otherwise I would not, and I told him I was to be the judge."

The charge of the court, MORROW, P. J., showing the material facts of the case, was as follows:

The important controversy in this case grows out of the alleged sale of a reaper and binder by the plaintiff to the defendant. It seems that Mr. Welles was engaged in selling agricultural implements and that Mr. Bradley, who lives in the vicinity of Mr. Seeley, was also selling machines. Mr. Bradley and Mr. Seeley had a talk about Mr. Welles having this Osborne binder, about the third of August, and Mr. Bradley says he told Mr. Seeley that he thought Mr. Welles would sell it cheap, as it was getting late in the season. They had some talk about the price for which it could be bought, and after-

wards Mr. Espy, who was in the employ of Mr. Welles, went up and saw Mr. Seeley in company with Mr. Bradley, on Friday. Mr. Espy says it was the 7th day of August. They found Mr. Seeley at work in the field, and after some conversation as to the price and the terms of sale, it was arranged that Mr. Seeley should come to Towanda and get the machine the fore part of the next week. He came, however, on Saturday, of the same week, and went to C. P. Welles' store, and he telephoned for Mr. R. M. Welles, who came down. Mr. Welles testifies that he talked with him about buying the machine, and that if he paid $50.00 or $60.00 down he would give him a year on his note, for the payment of the balance, and that if he took the machine they would see that it worked well, and that it was upon those terms that he took the machine.

On the following Tuesday Mr. McGill and Mr. Espy went up to Seeley's place, to set up the machine, and try it, and they both testify that it worked well. Mr. Bradley testifies to the same effect. They say they went around a nine or ten acre lot before dinner, and then unhitched and went to the house. After dinner Mr. Seeley and Mr. Espy went out of the house, Mr. Seeley sat down in the hammock, and Mr. Espy sat down near him, and they talked over how the machine worked. Mr. Bradley testifies that he went down where they were while they were talking about how the machine worked. Mr. Espy says that Mr. Seeley said he was satisfied with the way the machine worked, but that he did not want the trucks, and that it was agreed that he should have the machine, without the trucks, for $150.00, or with the trucks, for $160.00.

In the afternoon Mr. Seeley got another horse, and they went up to the field again, and cut around the piece. They say that there was some trouble in the working of the machine, and Espy and McGill say that it was caused by the buckwheat that stood in the oats in some places, which was green, and would not work like ripe grain, and that a shower came up, and wet the grain, so that they had to quit. The bargain as testified to by Mr. Espy, and Mr. Bradley, was that Mr. Seeley was to keep the machine, to pay $50.00 within a few days, and give his note for $100.00, payable in one year from September 1, 1885. Mr. McGill does not claim to have heard that talk, but he says that he understood from the conversation before he

came away, that Mr. Seeley was satisfied with the machine. Several witnesses have testified, on behalf of the plaintiff, as to a bargain by Mr. Seeley to go and cut Mr. Bradley's grain. They say that the price was talked about, that Mr. Seeley thought it was worth $1.25 an acre, but that it was finally agreed that Mr. Bradley should furnish a third horse, and pay $1.00 an acre. This evidence was given by the plaintiff for the purpose of showing that the defendant had accepted the machine and considered it to be his, at that time. .

On the part of the defendant he says that the agreement was that he was to have a trial of the machine, upon his own place, and if it did not operate so as to satisfy him he was not to keep it. He says there was nothing said as to whether he was to bring it back, or whether Mr. Welles was to come after it; that while the machine was in operation, both before and after dinner, he told them, all the while, that it did not perform well, and that he was not satisfied with it, and that he did not at any time agree to purchase it or keep it. He also testifies that when he took the machine both Mr. Welles and Mr. Espy told him that it would draw as easily as a plow on the same land. A few days after Mr. Espy and Bradley were there, Mr. Seeley made another trial of the machine, going once around the lot again, and he says that it would not work, and then under the agreement as he claimed it to be, he returned the machine to Mr. Welles, in Towanda. If you believe the evidence on the part of the plaintiff, particularly of Espy and Bradley, as to what occurred at the hammock, then there was a complete contract, and the plaintiff would be entitled to recover. [If, on the other hand, you believe the evidence on the part of the defendant, that he was to take the machine and try it, and that he was not to keep it unless it worked to his satisfaction, then the plaintiff cannot recover, provided you find that the machine did not work well, and that he had reasonable cause to be dissatisfied with it. But if the machine did good work he could not say " I have made a bad bargain, I am not satisfied," and return the machine. In other words, there must have been a reasonable cause for his dissatisfaction, and the returning of the machine must have been in good faith.][1] You have heard the evidence of the different witnesses as to what occurred in the field before dinner,

as to what occurred at the hammock, after dinner, as to what occurred in the field after dinner, and as to what occurred at the barn, where they went after the shower, and we will not stop to call your attention to this evidence in detail. . . . . [There is a great disagreement in the testimony of the witnesses for the plaintiff and the defendant upon this subject, and you will have to determine, from all this evidence, whether the working of the machine was such as to give Mr. Seeley reasonable cause to be dissatisfied with it, or whether it worked well, according to the agreement and warranty, as testified to by the plaintiff and his witnesses.][2] You will now take this case, and give it your careful consideration, and render such a verdict as will do justice between the parties.

The verdict of the jury was in favor of the plaintiff for $54.30, and judgment being entered thereon the defendant took this writ assigning as error:

1, 2. The parts of the charge embraced in [ ][1] [2]

*Mr. L. M. Hall* and *Mr. Isaiah McPherson* (with them *Mr. William T. Davies*), for the plaintiff in error:

The case of Singerly v. Thayer, 108 Pa. 291, is directly in point. The language of the court below in that case, charging "that if the elevator was reasonably fit for the purpose for which it was intended and if the defendant ought to have been satisfied with it, a verdict might be found for the plaintiff," was almost identical with the words of the court below in the present case, and the instruction was held to be erroneous. Moreover, there was not a particle of evidence that the refusal of the defendant was capricious, corrupt or even unreasonable.

*Mr. John N. Califf* and *Mr. H. N. Williams* (with whom were *Mr. N. C. Elsbree* and *Mr. R. H. Williams*), for the defendant in error:

1. In Singerly v. Thayer, 108 Pa. 291, unlike the case at bar, there was a written contract, fixed and certain in its terms. Thayer was to put in an elevator "warranted satisfactory in every respect," and the controlling question was as to the effect to be given to those words. In the present case,

the jury were instructed that if they found a contract as sworn to by the witnesses, Espy and Bradley, the plaintiff was entitled to a verdict. The plaintiff could not recover except upon the contract made at the hammock, and the court so instructed.

2. An immaterial or harmless error is no cause for reversal: Heysham v. Dettre, 89 Pa. 506; Chase v. Hubbard, 99 Pa. 226. The whole charge must be taken together, and if the judge has so expressed himself as to be understood, this court will not reverse: Kerr v. Sharp, 14 S. & R. 399; Eldred v. Hazlett, 38 Pa. 16; Numan v. Kapp, 5 Binn. 73. Under these authorities, there is not such a material error in the case as will reverse, even if the court was wrong in the portion of the charge embraced in the first assignment.

OPINION, MR. JUSTICE CLARK:

This suit was brought to recover the first instalment on an alleged contract for the sale of an Osborne reaper and binder. The principal controversy arises out of a disagreement as to the nature and terms of the contract. The plaintiff, on the one hand, alleges that the sale was absolute; that the machine was to be set up and tried, and was to work well; that it was put upon trial, and was accepted by Seeley; that the terms of the contract were fixed, and the time and manner of payment fully agreed upon. The defendant, on the other hand, maintains that he was to try the machine, and if it worked to suit him, and he could use it satisfactorily on his land, of which he was to be the judge, he was to take it upon the terms agreed upon; that upon trial it was not satisfactory, and he returned it to Welles. Both parties were to some extent corroborated by other witnesses, but the testimony was contradictory and conflicting, and it was for the jury to determine the true state of the facts.

In the general charge, the learned judge of the court below instructed the jury as follows: " If you believe the evidence on the part of the plaintiff, particularly of Espy and Bradley, as to what occurred at the hammock, then there was a complete contract, and the plaintiff would be entitled to recover. If, on the other hand, you believe the evidence on the part of the defendant, that he was to take the machine and try it, and

that he was not to keep it unless it worked to his satisfaction, then the plaintiff cannot recover, provided you find that the machine did not work well, and that he had reasonable cause to be dissatisfied with it. But if the machine did good work, he could not say, 'I have made a bad bargain, I am not satisfied,' and return the machine. In other words, there must have been a reasonable cause for his dissatisfaction, and the returning of the machine must have been in good faith. . . . . There is a great disagreement in the testimony of the witnesses for the plaintiff and the defendant upon this subject, and you will have to determine, from all this evidence, whether the working of the machine was such as to give Mr. Seeley reasonable cause to be dissatisfied with it, or whether it worked well, according to the agreement and warranty, as testified to by the plaintiff and his witnesses. You will now take this case, and give it your careful consideration, and render such a verdict as will do justice between the parties."

In this instruction of the court to the jury we think there was error. If the defendant's theory of the case on the facts is accepted, it is plain that although the reaper may have worked well in the opinion of those who saw it, yet, if it did not work to the satisfaction of the defendant, he was not obliged to take it. He testifies that he told Espy he would not take the reaper until he tried it, and if it worked to suit him, and his team could handle it on his farm, he would buy it, and that he was to be the judge of this himself. He complains that it was too heavy; that it weighed nearly two hundred pounds more than it had been represented to weigh; that his horses could not haul it, and that in his judgment it did not do the work well, etc. His objections to the reaper may have been ill founded; indeed they may have been in some sense unreasonable, in the opinion of others, yet, if they were made in good faith, he had a right, if his testimony is believed, to reject it. If he wanted a machine that was satisfactory to himself, not to other people, and contracted in this form, upon what principle shall he be bound to accept one that he expressly disapproved? What the learned court said to the jury on this point was equivalent to saying that although the reaper may have been wholly unsatisfactory to the defendant, yet if the jury thought he ought to have been satisfied, he

was bound to take it; whereas, if the defendant's testimony is true, he was to judge of the merits of the machine himself, not the bystanders nor the jury; and if he exercised his own judgment in good faith, in the refusal to accept it, he was certainly not bound for the price.

The case is ruled by Singerly v. Thayer, 108 Pa. 291, where the authorities are collected, and the legal principles involved fully discussed. What has been said is, of course, applicable to the case only in the event that the jury, in the re-trial of this case, shall accept the defendant's theory as the correct one, for if the evidence on the part of the plaintiff is believed, the contract was complete. Upon this question, as we have said, the testimony is conflicting. We have purposely refrained from any discussion of the facts, out of which the principles of law governing the case arise, fearing that any reference to the testimony in detail might have a misleading effect. It is of the highest importance in such a case as this that the jury should be left entirely free to consider and determine the facts upon their own judgment.

> The judgment is reversed, and a venire facias de novo awarded.