# CHARLESTON.

## OSBORNE & CO. v. FRANCIS.

Submitted June 16, 1893.—Decided November 15, 1893.

1. SALE.

Defendant bought a harvesting machine called a "binder" upon the condition that, if it did not work to his satisfaction, he might return it. *Held*, that his right to reject was absolute; and his reasons could not be investigated.

2. INSTRUCTIONS—REVERSAL OF JUDGMENT.

An erroneous instruction on a material point is presumed to be to the prejudice of the party appealing, against whom it is given, and will cause reversal, unless it clearly appears from the record that it was harmless.

D. B. EVANS for plaintiff in error cited 3 Am. & Eng. Ency. Law. 433; 39 Mich. 49 (33 Am. Rep. 351); 50 Mich. 565 (45 Am. Rep. 57); 24 Fed. Rep. 893; 7 Gray (Mass.) 139; 113 Mass. 136; 44 Conn. 218; 11 Hun (N. Y.) 70; 3 Bosw. (N. Y.) 336; 26 Hun (N. Y.) 376; 6 Wait's Act. & Def. 532, and cases cited; 99 Mass. 183; 43 Ill. 445.

J. L. PARKINSON for defendant in error cited 16 W. Va. 308; 28 W. Va. 1; 32 W. Va. 487; 5 Law. Rights & Rem. § 2505; 49 Vt. 345; 31 W. Va. 464; 45 Am. Rep. 61; 43 Vt. 525; 5 Field's Briefs §§ 272, 286; 34 Am. Dec. 56; 5 Waite Act. & Def. 583; 2 Field's Briefs § 471.

HOLT, JUDGE:

This action was for one hundred and thirty three dollars and fifty cents, the price and value of one right hand binder and fifty pounds Manilla binding twine, which plaintiffs claimed to have sold to defendant. It was originally brought before a justice, where the defendant confessed judgment for eight dollars and fifty cents for the twine, which together with the costs he paid. On the 9th of January, 1891, the justice gave judgment against Francis for one hundred and twenty five dollars, the price of the binder.

From this judgment the defendant appealed to the Circuit Court of Marshall county, where the case was tried before a jury, and a verdict found for plaintiff for one hundred and thirty three dollars and fifty cents. During the progress of the trial the court on motion of plaintiff gave three instructions. To the giving of the one marked "No. 2" defendant objected, but the court overruled the objection, and defendant excepted. On motion of defendant the court then gave the jury three instructions, to which plaintiff objected, but the court overruled the objection and gave the same, and plaintiff excepted. After the verdict the defendant moved the court to set the same aside and grant him a new trial, because the verdict was not in accordance with the law and the evidence, and because the court erred in giving plaintiff's instruction No. 2 to the jury; but the court overruled the motion for new trial, and defendant excepted, and the court signed, sealed and made part of the record the defendant's bills of exceptions, and also certified and made part of the record the instructions given and refused, and all the evidence in the case.

There are two points assigned as error : (1) That plaintiff's instruction No. 2 is erroneous; (2) that it is inconsistent with defendant's instructions, especially defendant's instruction No. 2.

Plaintiff's instruction No. 1 is as follows: "The jury are instructed that if they believe from the evidence that the machine was sold on a guaranty, and that after a fair trial it did do the work as guaranteed, then the verdict should be for the plaintiff."

Plaintiff's instruction No. 2 is as follows : "If the jury believe from the evidence that the machine was to give satisfaction to the defendant, then it should be a fair and reasonable satisfaction, and not a whimsical or unreasonable satisfaction." This is the only one to which defendant objected.

The instruction No. 2 given for defendant reads as follows :

"The court instructs the jury that if they find from the evidence that the machine, price of which is in question, was sold to the defendant with the understanding and

agreement that if it did not give satisfaction to the defendant the seller would take it back, then the defendant had a right to refuse to keep the machine if it did not in fact give him satisfaction, and the burden of proving that it did give him satisfaction is on the plaintiff."

Now, the appellant must make it manifest from the record that the ruling complained of is wrong.

The first question is: What were the terms, the language, the words of the contract of sale? The parties instead of committing it to writing and thus giving us a stable and trustworthy memorial that could speak for itself, have seen fit to commit it to the uncertain, slippery memory of man as to the terms, the words used; for on some of the very words, the meaning and scope of the contract, in large part depend. For this, we have to look to the evidence, what the parties said and did, the nature of the subject of sale, and the surrounding circumstances. There is no controversy that the cultivated land on defendant's farm was sidling, sloping, some of it steep. He had an old reaper that did not bind. Whether a binder could be used on it safely, usefully, was in his mind doubtful, and up to that time unknown.

The two agents of plaintiff who were together and made the sale were examined as witnesses on behalf of plaintiffs. The first one said defendant was to give for the binder his old reaper and one hundred and twenty dollars; one half payable in a year, and the balance in two years "We guaranteed for the machine to do as good work as any other machine of the same nature, to be as light running as any other reaping machine, and to do as good work in every particular. Defendant was to take the machine out, and if it did not do the work we guaranteed it to do, defendant was to bring it back, and we were to pay him for hauling it out ten miles and back. He got the machine June 26th. It was set up and started June 30, 1890." On July 3, 1890, witness got a card from defendant, saying: "My binder does not work right. You can come and get it;" and on the 18th of July, 1890, another card saying, "Your reaper is here at your order." He told defendant that their machine would

not go on a certain sloping field with the platform on the upper side without upsetting, but could not be upset with the platform on the lower side. He said that the machine was not sold on the condition that it was to give satisfaction, but defendant was to take the machine and try it, and, if it did not do its work well, the plaintiff was to pay for hauling it out and back.

The second agent, who helped to make the sale and was present and seemed to be principal agent, in answer to the question, "What was the cause of the upsetting?" said: "Well, the weight is always on the left-hand side, and in a right-hand binder the binding attachment don't make weight. To put the platform up the hill, the sideling will turn it over. It will not turn clear over, but it will upset, and stop the binder, stop the running of the shoes." On the question of giving defendant satisfaction he said: "In guarantying the machine to do its work properly we always guaranty it to give the man satisfaction, because a machine doing its work properly must always give satisfaction. If a man has a farm that wouldn't be fit for any binder, that is something else. Of course, we can't satisfy every farm, but we can the man."

Defendant testified that it cut the grain off as nice as any machine and tied the grain, but told plaintiff's agents that it worried his horses too much. On the main item here involved—the terms of the contract—he testified that he was to haul out the machine, and if it gave him satisfaction he was to take it; if it did not, he was to haul it back, and plaintiff was to pay for hauling it out and back; and when plaintiff's agents came out to see him about it, after receiving the cards, he told them in substance that he did not intend to take the machine. They replied, "You will have to keep the machine and pay for it." This was not denied.

Another witness, not interested, as far as appears, who was present at the sale, examined for defendant, said, by the contract, defendant was not to take the machine if it did not give him satisfaction. The evidence, therefore, at least tended to show that kind of conditional sale called in the books a "sale on trial," or "a sale or return." See

Benj. Sales (Bennett's 6th Ed.) § 595 *et seq.* and notes; *Id.* p. 568, notes 10, 11, *et seq.*; 21 Am. & Eng. Enc. Law, 647, 648, 714, cases cited; Tied. Sales, § 213 and cases; *Machine Co.* v. *Smith,* 50 Mich. 567 (15 N. W. Rep. 906); *Seeley* v. *Welles,* 120 Pa. St. 75 (13 Atl. 736); *Gray* v. *Bank* (City Ct. N. Y.) 10 N. Y. Supp. 5.

If it is a "sale on trial," it is said to be a sale on condition precedent; to buy if satisfied; that is, the title does not pass, until the condition prescribed is fully performed, although the posession is delivered; being rather a bailment with an option to buy than a sale. If it is a "sale or return" it is said to be a sale on condition subsequent; that is, the title passes with the posession but to be divested, if the condition is not performed and the property returned. "If the condition of the sale be that the property may be returned if it do not prove "satisfactory" to the buyer, or if the buyer is not satisfied with it after trial, the condition must be fully performed; that is, the buyer must in fact be satisfied. If the buyer expresses himself to be dissatisfied, it matters not how unreasonable or groundless his dissatisfaction may be, he can not be required to keep the property. The buyer is not obliged to be satisfied, although the property delivered conforms to his order. But some of the cases require that the dissatisfaction shall be real (not feigned) in order to relieve the buyer from liability, although they recognize that the dissatisfaction may be unreasonable without affecting the right of rejection." Tied. Sales, § 214; 1 Whart. Cont. § 590; Benj. Sales, (Bennett's 6th Ed.) § 595 *et seq.*; Amer. notes, 569; 2 Add. Cont. top p. 53 (Abbott's Ed. notes 1883).

"Sales are not always absolute. The acceptance is sometimes made conditional, and delivery given accordingly, and then no complete execution of the contract can take place until the condition is fulfilled. Instances of this are found in sales 'on trial' and the bargain of 'sale or return.' It is obvious that one may take a chattel on the understanding that he is to try it before the purchase shall take full effect; or again, upon a complete present bargain, with the reservation of a right on the buyer's part to return it at his option within some period; and the main object of

either provision is to give the buyer a chance to test the thing, and find it satisfactory, before he shall be finally bound to the bargain.  But the concession thus made by the seller is not co-extensive in the two cases, for the one puts the test as a condition precedent to divesting the seller fully of his property, while the other seems rather to carry property to the buyer defeasible on the condition subsequent of a test which proves unsatisfactory, though this application of a test must be, after all, a matter often within the buyer's own breast, and a sort of ill-defined ingredient in determining his satisfaction or dissatisfaction.

The point toward which these decisions gravitate is doubtless that of mutual intention, but using the terms above stated in no technical sense, since common-sense men will every day make bargains of either character without designating them by any particular names, we find the distinction quite marked as regards the immediate passing of property, between sales 'on trial,' 'on approval,' and the like, and the bargain of sale or return.  There is a buyer's option to be sure, but, as it has been fitly said, an option to purchase if the buyer likes is essentially different from an option to return a purchase if he should not like it.  In the one case the property will not pass until the option is determined ; in the other the property passes at once, subject to the right to rescind and return." 2 Schouler. Pers. Prop. (2d Ed.) § 310. In the one case the buyer is a bailee, rather than a buyer in fact, the title not having passed; in the other the title has passed by the delivery of posession, subject to defeasance by the exercise of the option reserved to rescind and return.  But on the point here involved each may as a general rule, return peremptorily within the time without giving any reason, if he acts honestly—a question to be determined by the intent of the parties.  It is a question of intention of the parties, and of the construction of the meaning of the conditional sale according to its terms, its subject-matter and the surrounding circumstances.

"In the one class of cases the right of decision is completely reserved to the promisor, without being liable to disclose reasons or account for his course; and a right to inquire into the grounds of his action and overhaul his de-

termination is absolutely excluded from the promisee and from all tribunals. It is sufficient for the result that he willed it. The law regards the parties as competent to contract in that manner, and, if the facts are sufficient to show that they did so, their stipulation is the law of the case," *Machine Co.* v. *Smith*, 50 Mich. 567 (15 N. W. Rep. 906) although the dissatisfaction may appear to be "whimsical or unreasonable," if expressed in good faith. *Seeley* v. *Welles*, 120 Pa. St. 69 (13 Atl. 736).

In such cases it is generally for the buyer to decide for himself; to decide whether a refusal to accept is or is not reasonable; because he uses for that purpose a term which indicates the state of his own feelings, which it is hard for any one to know so well as himself; and he may have prescribed the term for the purpose of protecting the gratification of some whim or fancy of his own, at all events to protect himself from the necessity of rendering any reason for his conduct. Such sales on trial are almost universally so construed in the every day affairs of life. But there may be cases—have been cases—where, owing to some peculiarity of subject matter or other peculiarity, such optional contract may be construed as binding the buyer to decide on fair and reasonable grounds, or to the extent of ascertaining whether the dissatisfaction be real; that is, whether it in fact exists. But generally his own feeling of dissatisfaction is enough, and his own announcement of it is to be taken as true. So that if the defendant took the binder on the condition that if it did not give him satisfaction—which the evidence certainly tends to prove, and which is the basis of the instruction given for defendant—then instruction No. 2 given for plaintiff is erroneous; for there is nothing to show that defendant intended the question of his satisfaction or dissatisfaction to be canvassed, or his decision reviewed. Such a doctrine would upset the whole law of sales on trial, and breed infinite uncertainty and confusion.

Defendant testified, in substance, that after trial he was dissatisfied with the binder; that it did not suit his farm; his team could not handle it; it worried his horses; told plaintiff's agent that he did not propose to worry his horses

any more with it, and the agent replied, "You will have to keep the machine and pay for it." "His objections to the reaper may have been ill-founded; indeed, they may have been in some sense unreasonable in the opinion of others; yet if they were made in good faith he had a right, if his testimony is believed, to reject it. If he wanted a machine that was satisfactory to himself, not to other people, and contracted in this form, upon what principle shall he be bound to accept one that he expressly disapproved? What the learned court said to the jury on this point was equivalent to saying that, although the reaper may have been wholly unsatisfactory to the defendant, yet if the jury thought he ought to have been satisfied he was bound to take it; whereas, if the defendant's testimony is true, he was to judge of the merits of the machine himself, not the by-standers or the jury; and if he exercised his own judgment in good faith in the refusal to accept it, he was certainly not bound for the price." CLARK, J., delivering the opinion in *Seeley* v. *Welles*, 120 Pa. St. 68–75 (13 Atl. 736). See *Railroad Co.* v. *Brydon*, 65 Md. 198 (3 Atl. 306) opinion of ALVEY, C. J., on motion for re-hearing, and cases cited; *Gibson* v. *Cranage*, 39 Mich. 49; *McCarren* v. *McNulty*, 7 Gray, 139; *Brown* v. *Foster*, 113 Mass. 136; *Zaleski* v. *Clark*, 44 Conn. 218; *Harvesting-Mach. Co.* v. *Chesrown*, 33 Minn. 32 (21 N. W. Rep. 846); *Silsby Manuf'g Co.* v. *Town of Chico*, 24 Fed. 893; *Pierce* v. *Cooley*, 56 Mich. 552 (23 N. W. Rep. 310); *Goodrich* v. *Van Northwick*, 43 Ill. 445; *Boiler Co.* v. *Garden*, 101 N. Y. 387 (4 N. E. Rep. 749, and 54 Amer. Rep. 709, notes).

Nor is the bad instruction given for plaintiff cured by the good one given for defendant; nor can we regard the one given for plaintiff as thereby plainly withdrawn. *McKelvey* v. *Railway Co.*, 35 W. Va. 500, 517 (14 S. E. Rep. 261). The general rule is that the court may cure errors in its instructions by withdrawing, explaining or correcting them. When a material instruction is given, that is erroneous, it should be effectively withdrawn. Elliot, App. Proc. § 705; *Kirland* v. *State*, 43 Ind. 146; and other cases cited in note to said section 705. "The court can not without fatal error give contradictory instructions to the jury,

since that would impose upon them the duty of determining the law as well as the facts." Elliot, App. Proc. § 705; *City of Logansport* v. *Dykeman*, 116 Ind. 15 (17 N. E. Rep. 587). Nor could the court have intended instruction No. 2 given for plaintiff as a modification or qualification of No. 2 afterwards given for defendant, for that would not be readily comprehended, even if so intended; and, if intelligible to the jury, would make the last instruction erroneous as well as the first (see *Carrico* v. *Railway Co.*, 35 W. Va. 389–404, 14 S. E. Rep. 12) as the error would be in the correction.

It is claimed on the part of plaintiff that the jury would be justified in finding that the contract was one of guaranty, as claimed by the plaintiff; and, if so, the court could not set the verdict aside. It is true, that the inquiry is: "What was the intention of the parties? And when that intention is ascertained the law will respect it. The question whether a sale of personal property is complete or only executory is to be determined from the intent of the parties as gathered from the contract, the nature and situation of the thing sold, and the circumstances surrounding the sale." *Morgan* v. *King*, 28 W. Va. 1, 14.

That there was a guaranty or warranty, I think, is clearly shown, and that, so far as the cutting and binding were concerned, and the lightness of draft on ground well suited to the use of such binder, the machine was all that it was guaranteed to be. But it is past contradiction that there was competent evidence tending to prove that the buyer who cultivated sidling and steep land, was expressly reserving the right to reject and send back the machine if on trial it should not be satisfactory to him positively and generally without saying in what respect. His mind was fixed immovably, that no chance should be left to force the article upon him, unless he finally chose to take it; and this condition was added to meet this purpose, and we may infer, was the one thing which induced the defendant to take it. See *Machine Co.* v. *Smith*, 50 Mich. 565 (15 N. W. Rep. 906) cited above. Promising to do a thing only in case it pleases himself may be no promise at all, yet it is what the books call a "sale on trial," and may become by mere lapse

of time a binding promise; and I can see nothing un-reasonable or unfair in such everyday *quasi* contracts of sale. It is the custom and habit of the people, especially with regard to certain kinds of property. On the contrary it would be harsh, if not unreasonable, to compel such a buyer without his fault to keep a binder which could not be safely or profitably used on such land as his, to which important item the guaranty did in no wise relate; and it shows the importance, as well as the motive, of such quali-fying reservation. The agents who sold the machine say in their testimony on this head, "Of course, we can't satisfy every farm, but we can the man."

It is also contended that the meaning and scope of the term "satisfaction" as it was used in this contract have been already fixed by this Court in interpreting and construing it in a like contract in the case of *Kinsley* v. *County Court*, 31 W. Va. 464 (7 S. E. Rep. 445). Here the contractor, Kinsley entered into a written contract with the County Court to make a road and build a bridge according to cer-tain specifications set out, and "to the satisfaction of the County Court of Monongalia county." On demurrer the court held that the declaration was not faulty in not alleg-ing that the work was not done to the satisfaction of the court; that "it means in that contract that it must be done according to the specifications, and that would be to the satisfaction of the court; that is, that the County Court was to accept it as completed, when it was satisfied that the work had been done and the bridge completed according to the specifications"—a very reasonable construction, so far as necessary on general demurrer to notice it in the declara-tion, and very likely in any construction of the contract.

But such a contract is very different from a "sale on trial," with the absolute and unqualified option to return if not satisfactory. A man might sell his horse on the latter terms, as is often done; but they seldom or never knowingly build bridges on such terms. In the bridge case, the subject-matter, the finality of the written contract at its inception, its reason and object, rebutted the idea of the reservation of the arbitrary power of refusal to accept and to pay; whereas the same things in part, and

the want of some of them, show such reservation in an ordinary sale on trial of a horse or machine to have been intended by the parties, which is at last the decisive test.

Counsel for plaintiff also contends that the instructions given for defendant were erroneous. The plaintiff could waive such error if it saw fit, and let the verdict in its favor stand; or, if dissatisfied, it could move the court to set it aside, and grant it a new trial. It elected to let it stand, and a judgment for plaintiff ought not to be affirmed on the ground that the court, at the instance of the defendant, gave an erroneous instruction to the jury. See *Murrell* v. *Johnson's Adm'r*, 1 Hen. & M. 450.

But the point urged with greatest force on behalf of plaintiff is that the error, if any, in giving its instruction No. 2, was a harmless error: "that the facts and circumstances certainly warranted the verdict of the jury." It is held in many cases that when the verdict is clearly right on the evidence, errors in instructions may be treated as harmless. This is made so by statute in the State of Indiana. Rev. St. Ind. 1881, § 658. See a full and able discussion of the subject in Elliott, App. Proc. c. 4, § 643; *Oil Co.* v. *Bretz*, 98 Ind. 231, and other cases cited; 3 Grah. & W. New Trials, 862. There has been and is a tendency no doubt to advance and widen the doctrine of harmless error. It is due in part to the desire constantly pressing upon appellate tribunals to reach the substantial merits of the case in spite of errors that are for the occasion deemed immaterial or to have done no harm. Hence the rule has long been settled that when the court can clearly see affirmatively that the error has worked no harm to the party appealing it will be disregarded (*Gilmer* v. *Higley*, 110 U. S. 47 (3 Sup. Ct. 471); and the judgment ought not to be reversed on the ground that the court below admitted illegal evidence, or gave an erroneous instruction to the jury, unless it appears that some injury could possibly have resulted therefrom to the party appealing (*Preston* v. *Harvey*, 2 Hen. & M. 55; for the appellant must make it manifest from the record in some way that the ruling against him is wrong. But, that being done, it is taken to be to his prejudice until the contrary is made to appear, and it

must appear so clearly as to be beyond all fair ground of questioning that the error did not and could not with any reasonable degree of likelihood have prejudiced the party's rights. See *Deery* v. *Cray*, 5 Wall. 795, 807. This qualification of the general rule or this cautious and sparing application of it rests upon the ground, that the court can not instruct upon the weight of evidence or the credibility of witnesses, and upon the settled rule that when there is any competent evidence fairly tending in some appreciable degree to prove his case, the party has the right to have the law applicable to such evidence correctly declared to the jury by the court. "Their superintendence in explaining and deciding legal questions is essential to the proper administration of justice, and ought to be exercised when either party requires their interference." *Picket* v. *Morris*, (1796) 2 Wash. (Va.) 325–346; *Hopkins* v. *Richardson*, 9 Gratt. 486. Our own cases on the general subject are numerous and indicate a tendency sometimes to extend the rule, at others to adhere strictly to the limitation of the rule. See the following cases on the subject: *Hall* v. *Lyons*, 29 W. Va. 410–420 (1 S. E. Rep. 582 ;) *State* v. *Douglass*, 28 W. Va. 298; *Mason* v. *Bridge Co.*, 20 W. Va. 224–239; *Clay* v. *Robinson*, 7 W. Va. 350,358; *Beaty* v. *Railway Co.*, 6 W. Va. 388–395; *Preston* v. *Harvey*, 2 Hen. & M. 55; *Pitman* v. *Breckenridge*, 3 Gratt. 127; *Wiley* v. *Givens*, 6 Gratt. 277; *Colvin* v. *Menefee*, 11 Gratt. 87; *Kincheloe* v. *Tracewells*, Id. 587; *Rea* v. *Trotter*, 26 Gratt. 585–600; *Binns* v. *Waddill*, 32 Gratt. 588, 593.

In *McKelvey* v. *Railway Co.*, 35 W. Va. 500–517 (14 S. E. Rep. 261) it is said: "This Court has repeatedly held that an erroneous instruction is presumed to prejudice a party, and will cause reversal, unless it clearly appears that the instruction could not have been prejudicial" to the exceptant. The Court will not reverse on account of an erroneous instruction on an immaterial point. *Pitman* v. *Breckenridge*, 3 Gratt. 127.

In *Davies* v. *Miller* (1797) 1 Call, 110, upon the trial of a writ of right, both parties claimed under John Miller, who died seised in 1742; the demandant claiming under Christopher, his grandson and heir-at-law; the tenants, under a

devise from Christopher, the son. After certain evidence was given on behalf of the demandant, the tenants moved the court, without going into evidence on their part, to instruct the jury that for reasons apparent the said *devise was void; and the court being of that opinion instructed accordingly. The jury found for the tenants, and demandant on bill of exceptions appealed. The court of appeals, though of opinion that the grounds of the ruling of the court below were wrong, and to that extent the language of the instruction given, yet, as it appeared by the demandant's own showing that Christopher, the grandson, had neither seisin, possession, nor title, so that demandant could derive none from him, the opinion and verdict were substantially right, and the court affirmed the judgment. "The instruction there bore upon the question which was decisive of the cause." *Wiley* v. *Givens* (1849) 6 Gratt. 277-285, opinion of Judge Allen. The instruction involved a question of law upon a state of facts about which there was no dispute.

It is said in the syllabus of *Wiley* v. *Givens* (made by the reporter): "When an appellate court is of opinion that an instruction given to the jury by the court below is erroneous, the appellate court can not undertake to determine that the verdict, notwithstanding the erroneous instruction, is right upon the evidence, and therefore to affirm the judgment; but the judgment must be reversed, and the cause remanded for a new trial." This is correct, as applied to the facts of this particular case; but Judge ALLEN did not mean to announce any such general proposition. On the contrary the implication is, that it would be otherwise, if the instruction were substantially right, and therefore could work no injury; but in a case where the jury may have been warranted in their verdict by the whole evidence, yet where they may have been mislead by the erroneous instruction in regard to so much of the case as the instruction referred to, the verdict must be set aside, and the cause sent back for a new trial.

This case is much stronger, for if the jury followed plaintiff's instruction No. 2, given by the court, they were misled in regard to what, in our view, was the vital point

in the case; for there is at least evidence tending to show that the agents of plaintiff, by their conduct and declarations, had dispensed with and virtually waived the necessity, if any such existed, of defendant returning the machine to them at Cameron. But the case is reversed for the reason that instruction No. 2, given on motion of plaintiff, was erroneous; and no opinion is intended to be given on the merits other than is necessarily involved, for on a new trial the evidence even as to that point may be different.

Judgment reversed, verdict set aside, and a new trial awarded.