CASE 28.—ACTION BY THE KIDDER PRESS COMPANY AGAINST J. V. READ & CO. FOR THE PRICE OF A PRINTING PRESS.—April 14, 1909.

## Kidder Press Co. v. J. V. Reed & Co.

Appeal from Jefferson Circuit Court (Common Pleas Branch, Third Division).

MATT O'DOHERTY, Judge.

Judgment for defendant, plaintiff appeals—Affirmed.

1.  Sales—Conditions—"Satisfactory"—Machinery.—Plaintiff constructed a printing press, which was in the nature of an experiment for the printing of labels. He sold the same to de-

fendant under a contract providing that, if the machine was not "satisfactory," it was to be returned free of expense to the seller. The contract also required the buyer to pay therefor after "satisfactory" trial a specified sum or its equivalent, and that on payment of the price plaintiff agreed to execute and deliver to the buyer a sufficient bill of sale of the property, subject to a condition that it should not be used for the manufacture of sales slips or counter checks. Held, that the word "satisfactory" meant that the defendant's decision that the machine was not satisfactory should be conclusive so that defendant, having given reasonable notice of such decision, was entitled to refuse to accept the machine without liability for the price.

2. Sales—Sale on Approval—Buyer's Expenses.—Where defendants bought a printing press under an executory contract that the press should be satisfactory to defendants, and plaintiff, after numerous efforts, failed to make the press work satisfactorily, so that defendants ultimately refused to accept or pay for the press, defendants were entitled to refuse to return the press until they had been reimbursed for reasonable sums advanced for living expenses of plaintiff's experts sent to adjust the machine and endevor to make it work to defendant's satisfaction.

HERBERT B. LEE, WM. MARSHALL BULLITT, KEITH L. BULLITT and BULLITT & BULLITT for appellant.

DODD & DODD for appellee.

OPINION OF THE COURT BY WM. ROGERS CLAY, Commissioner—Affirming.

The plaintiff, Kidder Press Company, instituted this action against J. V. Reed to recover the sum of $3,262, the purchase price of a printing press. The defendant, by answer, set up the contract hereinafter noted, and denied any liability for the purchase price. It also set up a counterclaim of $343.46. At the conclusion of all the evidence the court peremptorily instructed the jury to find against plaintiff on its claim as set out in its petition, and for defendant on his counterclaim. Judgment was entered accordingly, and the Kidder Press Company appeals.

The contract entered into between the parties is as follows: "Gibbs-Brower Company, General Agents American and European Machinery. 150 Nassau

Street, New York. Kidder Press Company hereby agrees to sell at the sum of $2,925.00 net to J. V. Reed & Company, Louisville, Ky., one of its No. 3 Roll Feed Bed and Platen Presses for two colors with multiple feed and cut, and fountain both sides, to be delivered boxed on cars at Louisville, about the 1st of March, 1906, warranted free from defects of material and manufacture and with the following attachments: Slitting attachment, $55.00; 7 sets slitters at $5.00, $35.00; 3 crosswise perforators, at $135.00, $405.00; rewinder for narrow rolls, $250.00. Freight and erector expenses, $200.00. J. V. Reed & Company hereby agrees to buy said property as above specified and to pay therefor after satisfactory trial, cash $2,925.00, or its equivalent. Deferred payments, if any, bearing 6 per cent. interest and exchange on New York. Said machine is guaranteed to do a good quality of printing and to produce rolls of narrow width, hard and even wound. The perforating attachment is to have in addition to crosswise perforating knives attachments for cutting cross. Register is guaranteed to be satisfactory and to accomplish the desired results. Sample inclosed to be changed in size to 3 in. x 2 in. making it possible to print nine (9) wrappers, the long way of the press and to print six (6) in width, size of press inside of chase measures 27 in. x 13 in. Attachments working three (3) times each to each impression of the press, making it possible to cut cross X each three (3) inches in each strip. As this X is to register with wrapping machine, register must be satisfactory to accomplish the desired result. If said machine is not satisfactory it is to be returned free of expense to the purchaser. Main shaft, diameter ———— inches.

Speed ——— turns per minute. To belt from below with motor connections. The seller to send erector to superintend erection of said machinery, for erector's time, hotel bills, and all traveling expenses. The purchaser agrees to insure said machinery fully, immediately upon its receipt. The purchaser agrees to report to the seller in writing all defects of material or manufacture, if any, in the above machinery within thirty days after receipt of same, and that the seller shall not be liable for any defects not so reported within said period. Upon payment of the purchase price in cash, Kidder Press Company agrees to execute and deliver a good and sufficient bill of sale of the above-described property, but such sale is made subject to the condition that said machine shall never be used in the manufacture of sales slips or counter check books by said purchaser or successors in interest and the title hereto is taken subject to said restriction, of which notice shall be given upon transfer. Kidder Press Company, Per Gibbs & Brower Company, General Agent. J. V. Reed & Company, By J. V. Reed. Louisville, Ky., November 27, 1905.''

On the margin, written in red ink, is the following: ''Note.—It is agreed that the whole agreement between the parties is contained in the contract, and that all representations and warranties, unless reduced to writing and inserted herein, are void.''

For some time prior to the date of the above contract, J. V. Reed, a printer of Louisville, Ky., was engaged in furnishing to the Colgan Gum Company, of that city, a large quantity of hand-made wrappers to be used in wrapping its tolu. In the latter part of the year 1905, appellant's agent, L. M. Cain,

came to appellee for the purpose of inducing him to permit the Kidder Press Company to construct and furnish him a machine to be used in furnishing wrappers in rolls. As an inducement to the appellee's consenting to purchase the machine, appellant's agent agreed to go with appellee's representative and help him make a contract with the Colgan Gum Company. They succeeded in getting an order from the latter company for 50,000,000 wrappers. Thereupon the above contract was entered into. The machine, itself, was in the nature of an experiment. Therefore, the contract provided that if the machine was not satisfactory it was to be returned, free of expense to the purchaser. The contract provided that appellant should deliver the press to appellee at Louisville, Ky., on March 1, 1906. The machine did not arrive until April 23, 1906. A representative of appellant came to Louisville at that time to direct and adjust the machine. He having failed to adjust the machine, the company then sent its chief expert, W. C. Williams, who arrived in Louisville May 22, 1906. He claims that he put the machine in good running order and then left on May 24, 1906. Afterwards other experts were sent by appellant. Many changes and alterations were made. On July 7th appellant requested a settlement for the press, but was refused on the ground that the machine was not satisfactory. On July 14th appellee wrote appellant as follows: "The press sent us has never delivered satisfactory work, and we are inclined to believe that it never will as it is now constructed. Some parts needed, which your erector promised to have sent to us at once, have never arrived, and as a result we have done nothing since he left the city." On De-

cember 26, 1906, appellee wrote appellant, in part as follows: "We are very much surprised in not hearing further from you in regard to your numerous ap-pointments in regard to your press that we have in our possession. As you know this press has never come up to our requirements, and is not at all satis-factory to us, and as we seem unable to hear from you on the subject, we are considering another press for our needs." After that appellant's general agent was sent to Louisville twice, once in February, 1907, and the next time in May following. During this time appellant attempted to sell appellee another machine at the price of $7,500. An offer to this ef-fect was made in a letter from appellant to appellee, dated February 6, 1907. On February 27, 1907, ap-pellee wrote Gibbs-Brower & Company, appellant's general agents, to the effect that the press was fur-nishing an output of only about 40 per cent. of the wrappers promised. On May 20th appellant sent appellee a letter containing the following: "Since the writer's return to the city, he has interviewed the Kidder Press Company in regard to the press they sold you, and has been instructed to advise you as follows: 'That you may return the press which we sold you under contract dated November 27, 1905, within ten days from date, or pay for same as per contract.'" On May 29, 1907, appellee wrote Gibbs-Brower & Co. to the effect that it would be impossi-ble for him to accept their proposition to return the machine, unless the claims he had against the ma-chine were paid. On May 22, 1907, the appellant, through its general agents, Gibbs-Brower & Co., wrote to the Gibbs-Inman Company, of Louisville, a letter containing the following: "We are not taking

advantage of our relation with Mr. Reed in giving you the information which we have, and suggest that you take over the press and contract, because we know that, in Mr. Reed's present state of mind, it is just the way he would like to settle the whole deal.''

Upon the question whether or not the machine was satisfactory, the overwhelming weight of the evidence is that it did not register properly, the output was insufficient, and a large portion of the work which was done for the Colgan Gum Company was returned as not being up to their requirements. Because of certain statements of appellant's agents, to the effect that the machine worked all right while they were in Louisville, because of the fact that appellee retained the machine from January until May and did certain work for the Colgan Gum Company thereon, and because there was some evidence to the effect that the failure of the machine to work satisfactorily was due to the fact that the paper used was defective and the operator employed in managing the machine was slow, it is insisted that the court erred in not submitting to the jury the question whether or not, as a matter of fact, the press was satisfactory. The determination of this question depends upon the further question whether or not the facts of this case bring it within the line of cases where the purchaser of an article has the arbitrary right to decide that it is unsatisfactory, or that other line of cases where he must decide the question of satisfaction as a reasonable man.

Upon this question the authorities are by no means harmonious. Thus in Hummel v. Stern, 21 App. Div. 544, 48 N. Y. Supp. 528, Stern contracted to furnish and install certain ventilating machinery upon the

premises of Hummel; the contract providing as follows: "We guarantee to ventilate receiving room to your satisfaction; otherwise, we will remove the wheel without cost to you." In that case the court said: "A wide distinction is drawn in the cases between contracts for doing work or furnishing material to suit the taste or fancy or caprice of a party, and contracts such as the one in suit. * * * One who makes a suit of clothes or molds a bust may not unreasonably be expected to be bound by the opinion of his employer honestly entertained; but in cases where the parties contract to do work not of the character referred to above, and it is stipulated that the person for whom the work is to be done is to be satisfied with that work, the final construction has been given that, to justify a rejection of the work and a refusal to pay therefor, there must be some reason for the dissatisfaction shown." Among the authorities holding the contrary doctrine may be mentioned that of Wood R. & M. Machine Co. v. Smith, 50 Mich. 565, 15 N. W. 906, 45 Am. Rep. 57, where it was held that, where the vendor of a harvesting machine gave a warranty that the contract of purchase should be of no effect unless the machine worked to the buyers' satisfaction, it was held the purchaser had reserved the absolute right to reject the machine, and that his reasons for doing so could not be investigated. A still stronger case is that of Plano Mfg. Co. v. Ellis, 68 Mich. 101, 35 N. W. 841. The agreement was that a certain grain binder should do good work and "give satisfaction." It was held that, unless the defendant was satisfied with the machine, although it did good work, he was not bound to purchase. In the case

of McCormick Harvesting Machine Co. v. Ches-
rown, 33 Minn. 32, 21 N. W. 846, the plain-
tiff agreed to furnish the defendant a cord
binder guaranteed to work satisfactorily. It was
held that in case, upon reasonable trial, it did not
work satisfactorily, it was unnecessary for the de-
fendant to return the binder to the plaintiff, but was
sufficient for him, within a reasonable time, to notify
plaintiff, in substance, that it did not work satisfac-
torily, and that he declined to accept it. The same
ruling was announced in regard to a steamboat, in
Gray v. Central R. Co., 11 Hun. 70. The purchasers
in that case agreed to buy a steamboat for $15,000,
"provided, upon trial, they are satisfied with the
soundness of her machinery, boilers," etc. It was
held that no recovery could be had unless it was
shown that defendants were satisfied with the boat,
whether or not they ought to have been satisfied was
immaterial. In the case of Aiken v. Hyde, 99 Mass.
183, the same doctrine was laid down with reference
to a machine for generating gas; also, in Goodrich
v. Van Nortwick, 43 Ill. 445, with reference to a fan-
ning mill; and in Singerly v. Thayer, 108 Pa. 291, 2
Atl. 530, 56 Am. Rep. 207, in regard to a passenger
elevator. Another strong case in support of the same
doctrine is Osborne v. Francis, 38 W. Va. 312, 18 S.
E. 591, 45 Am. St. Rep. 859. In that case the de-
fendant bought a harvesting machine upon the condi-
tion that if it did not work to his satisfaction he
might return it. It was held that his right to reject
was absolute, and his reasons for so doing could not
be investigated. See, also, Frary v. American Rub-
ber Co., 52 Minn. 264, 53 N. W. 1156, 18 L. R. A. 644;
Blaine v. Knapp & Co., 140 Mo. 241, 41 S. W. 787;

Wood Reaping & Mowing Machine Co. v. Smith, 50 Mich., 565, 15 N. W. 906, 45 Am. Rep. 57; Reeves & Co. v. Chandler, 113 Ill. App. 167.

In the case before us the printing press to be constructed was in the nature of an experiment. Appellant had never constructed one like it before. The purpose was to enable appellee to supply his customers with machine made wrappers, instead of handmade wrappers. The contract of sale was purely executory. The contract provided that if the machine was not satisfactory it was to be returned. A careful reading of the contract shows that the title was not to vest in the purchaser unless the machine was satisfactory and the purchase price therefor paid. It was a conditional sale, made upon the condition that the machine should be satisfactory. It is insisted that the meaning of "satisfactory" is to be determined by the actual warranty contained in the contract, to the effect that the "said machine is guaranteed to do a good quality of printing and to produce rolls of narrow width, hard and even wound." In our opinion this would be taking entirely too narrow a view of the word "satisfactory" as repeatedly used in the contract. The machine might comply with the guaranty referred to, and still be utterly useless for the purposes for which it was constructed. The work might be of good quality, and yet the output so small that the machine could not be run except at a loss. When we consider the relations of the parties, the peculiar circumstances under which the contract was entered into, and the further fact that the title to the property was not to vest unless the machine was satisfactory, we conclude that the parties intended to be bound by the decision of appellee as to

whether or not the press was satisfactory, for it is well settled that, where the contract requires the article to be satisfactory, without stating the person to whom it is to be satisfactory, it means satisfactory to him to whom it is sold or furnished. Taylor v. Brewer, 1 Maule & S. 290; McCormick Harvesting Machine Co. v. Chesrown, 33 Minn. 32, 21 N. W. 846; Singerly v. Thayer, 108 Pa. 291, 2 Atl. 530, 56 Am. Rep. 207. It may be that appellant was injudicious and indiscreet in undertaking to furnish the press to be paid for upon the happening of a contingency so hazardous or doubtful as the approval or satisfaction of appellee, but it assumed the risk. Against the consequences resulting from its own bargain, the law affords it no relief. Having voluntarily assumed the obligations and risk of the contract, appellant's legal rights are to be ascertained and determined solely according to its provisions. McCarren v. McNulty, 7 Gray (Mass.) 139. In the record before us there is nothing from which it could be even inferred that appellee was satisfied with the press. For months appellant endeavored to make the machine work to his satisfaction. It utterly failed. Its letter of May 22d to the Gibbs-Inman Company shows that it recognized the fact that appellee was not satisfied with the press. As the contract in question was merely executory, and the sale was made upon the condition that the press should prove satisfactory to appellee, as he alone had the right to determine whether or not it was satisfactory, and as he at no time, either by word or deed, intimated that he was satisfied, we conclude that the trial court properly instructed the jury to find against plaintiff on its claim for the purchase price.

The proof shows that appellee, after receiving appellant's letter of May 20th requiring him either to pay or return the machine, boxed the machine up and declined to return it until appellant paid him the sum of $343.46 advanced by him as the living expenses of appellant's experts. Appellant was a nonresident. The evidence shows that appellee's claim was just. Indeed, there is no evidence to the contrary. It was not incumbent upon appellee to return the press until his valid claim against appellant was satisfied. C. L. Flaccus Glass Co. v. Alvey-Ferguson Co., 102 S. W. 870, 31 Ky. Law Rep. 552. The court did not therefore err in instructing the jury to find for appellee on his counterclaim.

Judgment affirmed.