G. William MOSELEY, Appellant,

v.

K COPTERS, INC., Appellee.

No. 636.

Court of Civil Appeals of Texas,
Tyler.

Aug. 3, 1972.

Rehearing Denied Aug. 31, 1972.

Strasburger, Price, Kelton, Martin & Unis, Rowland Foster, Dallas, for appellant.

John A. Pace, Dallas, for appellee.

MOORE, Justice.

Plaintiff, Dr. G. William Moseley, sued defendant, K Copters, Inc., to recover damages for the wrongful detention of a helicopter which he delivered to K Copters for repair and sale. Defendant, K Copters, answered with a general denial and asserted that it was entitled to an artisan's lien for labor and materials. By way of a counter claim, Defendant K Copters also alleged that it had leased Dr. Moseley another helicopter while his helicopter was in possession of defendant and that under the contract Dr. Moseley was, in equity, indebted to K Copters for the rental value thereof in the amount of $3,744.00, as well as the cost of insurance thereon during the lease. Defendant also sought recovery for certain parts and equipment furnished plaintiff at his special instance and request, as well as for a reasonable attorney's fee.

Trial was before a jury. In response to Special Issue No. 10, the jury found that the reasonable rental value of Dr. Moseley's helicopter N 204Z during the time it was detained by K Copters from October 1, 1969 until it was subsequently sold by agreement of the parties on May 29, 1970, amounted to the sum of $30,000.00. Plaintiff made a motion for judgment upon the verdict after giving due credit for certain offsets found by the jury on K Copters' counter claim. Defendant, K Copters, countered with a motion requesting the court to disregard Special Issue No. 10, and prayed for judgment on its counter claim notwithstanding the jury's finding on Special Issue No. 10. The trial court granted K Copter's motion to disregard Special Issue No. 10 and entered judgment in favor of K Copters on its cross claim and counter claim. Dr. Moseley duly perfected this appeal. The parties will hereinafter be referred to as "appellant" and "appellee."

Appellant urges by two points of error that the trial court erred in disregarding Special Issue No. 10 and in granting judgment non obstante veredicto in favor of appellee because he says Special Issue No. 10 was (1) supported by the evidence and (2) was material in light of the pleadings and testimony. Consequently, he asserts that the court was not authorized to disregard the issue. We do not share this view and accordingly overrule the points and affirm the judgment of the trial court.

The record shows that Dr. Moseley was engaged in the transportation business by the use of helicopters. He conducted his business in the State of Tennessee. K Copters was engaged in the business of repairing and selling helicopters in Irving, Dallas County, Texas. Prior to June 13, 1969, Dr. Moseley, being the owner of a helicopter numbered N 204Z, contracted to sell the craft to a company in Equador whose interest was represented by a Mr. Conway. In connection with the sale, certain alterations to the craft were necessary and Dr. Moseley delivered the craft to K Copters, Inc. in Irving, Texas, for that purpose. When the helicopter was delivered to K Copters, Dr. Moseley and

K Copters duly executed the following written agreement:

"Contract    June 13, 1969

"This is a contract between K Copters Inc. (T. L. Gist) and G. W. Moseley.

"K copters is to let G. W. Moseley use helicopter N 996 B until which time monies are placed in escrow at Irving Bank and Trust (W. O. Parsons) in the amount of $36500.00 (Thirty six thousand five hundred dollars and no/00.) payable to G. W. Moseley by Atesa Company or any persons representing the interests of Robert Conway for the purchase of N 204 Z from G. W. Moseley. When the said monies are deposited G. W. Moseley agrees to pay K Copters Inc. $18,000.00 for N 996 B plus $700.00 estimated share of engine and turbine changeover on N 204 Z.

"For the use of N 996 B G. W. Moseley agrees to assign the Bill of Sale of N 204 Z to K Copters.

"In event of failure of the interest of Mr. Robert Conway to place the monies in escrow, G. W. Moseley agrees to pay the total estimated cost of turbine and engine exchange on N 204 Z and K copters will return to G. W. Moseley the assigned bill of sale upon the return of N 996 B or Satisfactory payment of $18,000.00 for N 996 B total purchase price."

Shortly after the execution of the contract, Dr. Moseley took possession of helicopter N 996B and took it to Knoxville, Tennessee, where he commenced using it in his business.

In the meantime K Copters commenced work on the engine exchange on his helicopter numbered N 204Z. During the progress of the work, Mr. Conway requested K Copters to install several items of expensive equipment on the helicopter which they did.

On August 26, 1969, the Equadorian company advised K Copters that they were not going to carry out their contract to purchase the helicopter N 204Z, and K Copters immediately notified Dr. Moseley. Dr. Moseley nevertheless continued to keep and use K Copter's helicopter N 996B for a period of five weeks and finally returned it on or about October 1, 1969. At that time a dispute arose between Moseley and K Copters as to the amount of money due for work and parts installed on Moseley's helicopter; the amount owed by Moseley for the use of K Copter's helicopter N 996B, after the time the Equadorian company terminated this contract on August 26, 1969; for insurance costs during the period; and for certain repair parts shipped to Moseley in Tennessee in the amount of $406.92.

K Copters refused to release Dr. Moseley's helicopter to him until a settlement had been made. On October 3, 1969, K Copters sent Dr. Moseley an itemized bill as follows: $1,350.00 for turbine and engine exchange; $406.92 for parts shipped to Tennessee; $829.00 insurance on the craft furnished Dr. Moseley; $3,744.00 for 156 hours at $24.00 per hour for the use of their craft and $535.50 for 1/2 of the labor and 10% of the parts at the request of the Equadorian company. Dr. Moseley admitted that there was a balance due and owing for the turbine and engine exchange and for the parts shipped to Tennessee but denied that there was any agreement to pay rent and insurance on the craft used by him or that he agreed to pay for any work requested by the Equadorian company. Moseley, through his attorney, offered to pay the balance due on the turbine and engine exchange provided K Copters would release his helicopter. K Copters refused stating that they wanted the bills paid.

The jury, in response to the following special issues as numbered in the court's charge, made the following material findings: (1) the reasonable cost the turbine and engine exchange on N 204Z amounted to the sum of $1,200.00; (2) that Dr. Moseley did not authorize K Copters to

install any of the additional items of equipment requested by Conway; (6) that Dr. Moseley did not agree to pay insurance cost on helicopter N 996B which K Copters allowed him to use; (8 ) that Moseley used helicopter N 996B after August 26, 1969, the date the Equadorian company terminated their agreement to purchase his helicopter N 204Z; (9) that the reasonable rental value of helicopter N 996B for the period of use by Dr. Moseley after August 26, 1969, amounted to the sum of $3,500.00; (10) the fair rental value of Dr. Moseley's helicopter N 204Z in Dallas County for the period October 1, 1969, to the sale date of the N 204Z on May 29, 1970 was $30,000.00; (11) that a reasonable attorney fee for appellee K Copters on its counter claim was $900.00; (12) that Moseley's attorney, Beane, in behalf of Moseley offered to pay K Copters, on or about October 1, 1969, the amount of money equal to the cost of the turbine and engine exchange; (13) that K Copters refused the offer; (14) that on or about June 10, 1969, Moseley advanced K Copters the sum of $800.00 to apply on the cost of the turbine and engine exchange; (16) that K Copters refused to allow Moseley to take possession of helicopter N 204Z after the Equadorian company terminated its agreement to purchase his craft unless Moseley paid the cost of engine and turbine exchange and additional parts and labor.

After disregarding Special Issue No. 10, judgment was entered in favor of K Copters for (1) the sum of $1,200.00 as found by the jury in answer to Special Issue No. 1, less a credit of $800.00 as found by the answers of the jury to Special Issue Nos. 14 and 15; (2) the sum of $3,500.00 as rent due to K Copters as found by the jury in answer to Special Issue No. 9; (3) the sum of $406.92 for goods, wares and merchandise sold by the defendant and delivered to the plaintiff at Knoxville, Tennessee; and (4) the sum of $900.00 as attorney's fees found by the jury in answer to Special Issue No. 11.

As stated, appellant's sole complaint on this appeal involves the propriety of the trial court's disregarding Special Issue No. 10. He does not attack any of the findings made in favor of K Copters on its cross action and counter claim.

It is settled law that the granting of a judgment notwithstanding the verdict is proper only when there is no evidence to support the jury's answer to the issue or when the issue is immaterial. Rule 301, Texas Rules of Civil Procedure; C. & R. Transport, Inc. v. Campbell, 406 S.W.2d 191, 194 (Tex.Sup., 1966). While we agree that Special Issue No. 10 is amply supported by the evidence, we believe that under the record the issue is immaterial.

Special Issue No. 10 is purely a damage issue. It determined only the amount of damages in a situation where the detention was wrongful. Thus, the materiality of Special Issue No. 10 depends upon whether or not K Copters' detention of the helicopter was wrongful. If wrongful, it would, of course, be material. If, on the other hand, K Copters had a legal right to hold the craft, there could be no conversion and Special Issue No. 10 would be immaterial.

Conversion may consist in the wrongful detention of chattels under an assertion of right inconsistent with the owner's general dominion, particularly if the detention occurs after demand for possession. 14 Tex.Jur.2d, Conversion, sec. 23, p. 25.

Appellant argues that the record shows as a matter of law that the detention was wrongful. In this connection he says that the only justification K Copters had for holding the craft was its artisan's lien created by the turbine and engine exchange. He argues, however, that the lien was waived when K Copters refused to accept his offer of the balance due thereon, and that he was entitled to immediate possession. In reply, K Copters

say that even though the proposition be conceded, it had an equitable lien on Dr. Moseley's helicopter for the rental value for the use of their helicopter during the five weeks he kept and used it after the sale to the Equadorian company was terminated. K Copters argue that since the record conclusively shows that Moseley gave the bill of sale to K Copters as security for the "use" of their helicopter, N 996B, a lien existed in their favor until he paid for its "use," especially for the "use" thereof after he knew the contract for the sale of his helicopter had been terminated. Appellant counters by pointing out that there is nothing in the contract obligating Dr. Moseley to pay rent. Therefore he says there is no basis for imposing an equitable lien on his craft for rent on appellee's craft.

Generally when a transaction resolves itself into a security, whatever may be its form, and whatever name the parties may choose to give it, is in equity a lien. Williams v. Greer, 122 S.W.2d 247, 248 (Tex.Civ.App., Dallas, 1938, n. w. h.). As a general rule any express executory contract whereby one party clearly indicates an intention to charge or appropriate some particular property as security for a debt or other obligation or whereby one party promises to assign, convey or transfer the property as security for such debt or obligation, creates an equitable lien on the property so indicated. 53 C.J.S. Liens § 4, p. 840.

Under the contract, Dr. Moseley had an option to purchase helicopter N 996B from K Copters for $18,000.00. He obligated himself to pay for it or return it when and if the Equadorian company terminated their agreement to purchase his helicopter. Yet, when the Equadorian company terminated their agreement, he neither exercised his option to purchase nor returned the craft to K Copters as he agreed to do. Instead, he kept it and used it in his business for five weeks. Under these circumstances we think K Copters had an equitable lien upon his helicopter for the reasonable value of the use of their craft during the five weeks he failed to abide by his obligation to return K Copters' craft to them. The contract so provides. It specifically states that he was giving title to K Copters as security for the use of their helicopter. It follows that if K Copters was entitled to an equitable lien, the detention would not be wrongful until such charges were legally tendered or paid.

Moreover, we believe the judgment may be sustained upon other grounds. In Hickman v. Aldridge, 21 S.W.2d 341 (Tex.Civ.App., 1929, n. w. h.), the court said:

"* * * Undoubtedly the general rule is that 'a refusal to permit an owner to take possession of or handle chattels which defendant holds under an invalid contract, or a contract that has been rescinded, constitutes a conversion.' 38 Cyc. 2023; Uvalde National Bank v. Dockery (Tex.Civ.App.), 83 S.W. 29. But an exception to such rule seems to be recognized as applicable to a case where the purchaser of personal property, who acquires possession under a contract which is afterwards mutually rescinded, withholds the possession of such property only to enforce a restoration of something given under the contract. Flaccus Glass Co. v. Alvey-Ferguson Co. (Ky.) 102 S.W. 870; Kidder Press Co. v. J. V. Reed & Co., 133 Ky. 350, 117 S.W. 950, 134 Am.St.Rep. 450."

While the facts in the instant case are somewhat different from those in that case, we think the same principle applies here for the following reason. When Moseley allowed the contract to terminate by its own terms by refusing to take up the option, K Copters became entitled to a full restoration. This could have been accomplished, at that time, by the immediate return of their helicopter to them. Instead, Dr. Moseley kept it and used it. According to the evidence, helicopters, while in

use, depreciate rather rapidly and a complete overhaul is required by law after a certain number of hours of use. Consequently, when Dr. Moseley returned it after five weeks use, he did not make full restoration of something given under the contract. Full restoration could only be made by paying the reasonable rental value for the use and depreciation during such time. Therefore, if K Copters had the right to demand as a condition for yielding possession of the helicopter that Dr. Moseley make full restoration, as we have concluded under the above authorities that it did, then K Copters would not be liable to Dr. Moseley for damages as the result only of the detention of his helicopter because the refusal to yield possession under such circumstances would not show a conversion.

The judgment of the trial court is affirmed.